## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **RANDY WARREN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:13-CV-1135-M** |
| | § | |
| **BANK OF AMERICA, N.A., as Successor** | § | |
| **by Merger to BAC Home Loans Servicing,** | § | |
| **L.P., formerly known as Countrywide** | § | |
| **Home Loans Servicing, L.P.,** | § | |
| | § | |
| **Defendant.** | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the *Standing Order of Reference* dated April 8, 2013, this case has been referred for pretrial management.  Before the Court is *Defendant's Motion to Dismiss Plaintiff's First Amended Petition and Brief in Support of Same*, filed March 25, 2013 (doc. 6).  Based on the relevant filings and applicable law, the motion should be **GRANTED.**

### I.  BACKGROUND

This action involves the attempted foreclosure of real property located at 4131 Buena Vista Street, Dallas, Texas 75204 (the Property).  (Amend. Compl. (doc. 1-5) at 3.)[1]  Randy Warren (Plaintiff) sues Bank of America, N.A. (Defendant), as successor by merger to BAC Home Loans Servicing, L.P., formerly known as Countrywide Home Loans Servicing, L.P..  (*Id.* at 4.)

Plaintiff alleges that on September 20, 2006, he obtained a home equity loan in the amount of $255,200.00 from American Brokers Conduit (American Brokers).  (*Id.*)  He executed a promissory note and a deed of trust securing the note in American Brokers' favor.  (*Id.* at 3, 10–28.)

---

[1]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Both the note and deed of trust identified American Brokers as "Lender." (*Id.* at 10, 14.) The deed of trust named Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Lender and its successors and assigns and as the beneficiary of the deed of trust. (*Id.* at 14.) The deed of trust also granted MERS the right to exercise all of the interests Plaintiff granted Lender, including foreclosing and selling the Property upon default and releasing and canceling the deed of trust. (*Id.* at 15–16.)

## A.      **The First Lawsuit**

Plaintiff apparently defaulted and on July 23, 2010, Defendant obtained a "foreclosure order" in state court. (*Id.* at 4.) On December 6, 2011, Plaintiff sued Defendant in state court disputing its authority to declare a default, accelerate the debt, appoint a substitute trustee, or conduct a foreclosure sale. *See Warren v. Bank of Am., N.A.*, No. 3:11-CV-3603-M, 2012 WL 3020075, at *1–2 (N.D. Tex. June 19, 2012), *rec. adopted*, 2013 WL 1131252 (N.D. Tex. Mar. 19, 2013). Among other things, he alleged that MERS could not assign the note or deed of trust because it was not a party to, and never had a beneficial interest in, the note.[2] *Id.* Alleging that the note was "securitized", he claimed Defendant was not the owner of the note or deed of trust and had no right to foreclose on the Property. *Id.* He asserted a claim to quiet title and requested declaratory judgment and injunctive relief to restrain Defendant from foreclosing and evicting him from the Property. *Id.*

Defendant removed the action to federal court based on diversity jurisdiction and later moved to dismiss the complaint for failure to state a claim. *Id.* at *1. The Court granted Defendant's motion and dismissed Plaintiff's complaint with prejudice on March 19, 2013. *Id.* at *8.

---

[2] MERS assigned the note and deed of trust to Defendant's predecessor by merger in December 2008. *See Warren*, 2012 WL 3020075, at *1.

2

**B.**    **The Current Lawsuit**

On March 15, 2013, four days prior to the dismissal of his first lawsuit, Plaintiff filed this action in state court to restrain Defendant from conducting the foreclosure sale scheduled for April 2, 2013, and evicting him from the Property.  (doc. 5-1 at 3, 5–7.)  He contends that according to the Dallas Central Appraisal District (DCAD), the Property's appraised fair market value in 2006 and prior years "never exceeded $249,500.00."  (*Id.* at 3.)  He claims his home equity loan violated the Texas Constitution because it was more than 80 percent of the Property's value.  (*Id.*)

In addition, Defendant purportedly failed to notify him of the pending foreclosure sale, since the foreclosure notice was "returned as undeliverable" by the U.S. Postal Service (USPS).  (*Id.* at 4.)  Before filing suit, he sent Defendant a request "for a verification of the debt" pursuant to the federal Fair Debt Collection Practices Act (FDCPA) and the Texas Debt Collection Practices Act (TDCPA).  (*Id.* at 3–4, 34.)  He "believes" that pursuant to the FDCPA, "the foreclosure may not be conducted" until 30 days have passed after the date he sent his request.  (*Id.* at 5.)  He further claims Defendant cannot foreclose because there were "defects in the original loan financing and the original foreclosure order" and because Defendant failed to "physically post[]" a copy of the foreclosure sale notice at "the courthouse" where the sale was to take place.  (*Id.* at 4–5.)  Although the complaint does not formally list any substantive claims, Plaintiff's request for injunctive relief contains allegations that may liberally construed as claims for wrongful foreclosure and violations of the Tex. Const. art. XVI, § 50(a)(6)(B), the FDCPA, and the TDCPA.  (*See id.* at 3–5.)

On March 18, 2013, Defendant removed the action to federal court based on diversity jurisdiction, and it later moved to dismiss the complaint for failure to state a claim.  (*See* docs. 1; 6.)  With timely-filed responses and replies, the motion to dismiss is now ripe for recommendation.

## II.  MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 6.)

### A.    <u>Rule 12(b)(6) Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the pleadings.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert denied*, 530 U.S. 1229 (2000); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers."  *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).[3]  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[3]  Although Plaintiff was initially represented by counsel, his attorney withdrew from the representation on April 11, 2013.  (*See* docs. 13 and 14.)  Given Plaintiff's subsequent *pro se* status, his pleadings submitted after that date are subject to the "liberal construction" standard.

(2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief

above the speculative level."  *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim

upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that

is plausible on its face."  *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the miscon-
> duct alleged.  The plausibility standard is not akin to a "probability requirement," but
> it asks for more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a defendant's liabil-
> ity, it "stops short of the line between possibility and plausibility of 'entitlement to
> relief.'"

*Iqbal*, 556 U.S. at 678  (quoting *Twombly*, 550 U.S. at 570).  When plaintiffs "have not nudged their

claims across the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*,

550 U.S. at 570.

    As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion.  *Spivey*,

197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with

a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude

the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*,

847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise,

LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented

to and not excluded by the court," however, "the motion must be treated as one for summary

judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all

the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

    "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint.

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents "attache[d] to a motion to dismiss are [also] considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). Lastly, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Here, Plaintiff has attached to his complaint copies of what he claims are the promissory note and the deed of trust, the DCAD report showing the Property's appraised market value from the years 2000 to 2012, the notice of substitute trustee sale that Defendant mailed him in March 2013 at the Property's address, evidence from the USPS showing that certain correspondence was returned "undeliverable," the verification request he mailed Defendant on March 14, 2013, and court documents relating to his first lawsuit. (*See* doc. 5-1 at 10–70.) Because these documents are attached to the complaint, they are considered part of the pleadings. *See In re Katrina Canal Breaches*, 495 F.3d at 205.

In turn, Defendant has attached to its motion copies of the notice of substitute trustee sale it mailed Plaintiff and his counsel in March 2013 and the foreclosure order it obtained in state court on July 23, 2010. (doc. 6-2 at 1–19.) The sale notice is referenced in Plaintiff's complaint and is central to his theory of the case; it is therefore considered part of the pleadings.[4] *See Collins*, 224 F.3d at 499. The foreclosure order can be judicially noticed because it is a matter of public record

---

[4] Defendant also attached a copy of a USPS record dated March 5, 2013, showing that Defendant mailed Plaintiff via certified mail, return receipt requested, three different packages addressed to mailing addresses in Irving Texas, Dallas Texas, and Addison Texas. (*See* doc. 6-2 at 20.) Plaintiff has not objected to the introduction of this document.

whose contents cannot reasonably be disputed.  *See Norris,* 500 F.3d at 461 n. 9; *see also* Fed. R.

Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily

determined from sources whose accuracy cannot reasonably be disputed").  The Court may consider

all of these attachments without converting the motion to dismiss into a motion for summary

judgment.  *See Collins*, 224 F.3d at 499; *Cinel*, 15 F.3d at1343 n. 6.

**B.**   **Res Judicata**

Defendant initially moves to dismiss Plaintiff's claims for failure to provide notice and

violations of the Texas Constitution on grounds of "res judicata."  (doc. 6 at  10–13.)

*1.*   *Res Judicata in a Rule 12(b)(6) Context*

Res judicata is generally "an affirmative defense that should not be raised as part of a

12(b)(6) motion, but should instead be addressed at summary judgment or at trial." *American Realty*

*Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. App'x 662, 664 n.1 (5th Cir. 2004) (citing

*Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594, 596 n. 3 (5th Cir. 1977)).  Nevertheless,

the Fifth Circuit has held that "[i]f, based on the facts pleaded and judicially noticed, a successful

affirmative defense appears, then dismissal under Rule 12(b)(6) is proper."  *Hall v. Hodgkins*, 305

F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co., Ltd. v. Cong.*

*Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).  Here, because the elements of res

judicata appear on the face of Plaintiff's complaint and in documents that are subject to judicial

notice, this defense may be considered for purposes of Defendant's motion to dismiss.  *See id.*; *see*

*also Saint Paul Commodities, LLC v. Crystal Creek Cattle Co.*, No. 3:11-CV-0037-G, 2012 WL

3135574, at *3 n. 3 (N.D. Tex. Aug. 1, 2012) (considering the res judicata defense in a Rule 12(b)(6)

context because"all [the] relevant facts [were] in the record and [were] uncontroverted").

The "rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Comer v. Murphy Oil USA, Inc.*, No. 12-60291, 2013 WL 1975849, at *3 (5th Cir. May 14, 2013); *accord Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'")

## 2.    Claim Preclusion

"True res judicata" or "claim preclusion . . . bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citation omitted).  This doctrine has four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Comer*, 2013 WL 1975849, at *3.  As with all affirmative defenses, the burden of proving claim preclusion "rests on the party claiming the benefit of the doctrine." *Patterson v. Dean Morris, L.L.P.*, No. CIV.A. 08-5014, 2011 WL 1791235, at *6 (E.D. La. May 6, 2011) (citation omitted); *accord Taylor*, 553 U.S. at 907.

Here, Plaintiff filed the current lawsuit four days *before* a final judgment on the merits was rendered in the first lawsuit.  *See Warren*, 2012 WL 3020075, at *8; (*see* also doc. 1-2 at 4). Because the third element of claim preclusion has not been met, his claims are not barred by this doctrine.

## 3.    Issue Preclusion

Collateral estoppel, or issue preclusion, "is limited to matters distinctly put in issue, litigated, and determined in the former action." *Next Level Commc'ns LP v. DSC Commc'ns* Corp., 179 F.3d

8

244, 250 (5th Cir. 1999) (citation omitted). This doctrine has three elements: (1) the issue at stake is identical to the one involved in the prior action; (2) the issue was actually litigated in that action; and (3) the determination of the issue was a critical and necessary part of that judgment. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009) (citation omitted).

Plaintiff's claims for violation of the Texas Constitution and failure to provide notice were not asserted or litigated in his first lawsuit. *See Warren*, 2012 WL 3020075, at *1–8. Consequently, the determination of these claims was not "a critical and necessary part" of the Court's judgment. *See id.* Because the second and third elements of issue preclusion are not satisfied, this doctrine is also inapplicable.

## C.   Failure to Provide Notice (Wrongful Foreclosure)

Defendant moves to dismiss Plaintiff's allegations that it did not provide him with or "physically post" the notice of substitute trustee sale.  It argues that he fails to state a viable claim because the Texas Property Code requires only that the "notice be served, not received", and it mailed Plaintiff and filed with the Dallas County Clerk copies of the sale notice.  (doc. 6 at 13–16.) Plaintiff's contentions that he did not receive a notice of default and intent to accelerate, that Defendant failed to provide him with and physically post copies of the sale notice, and that these failures are "defects" that prevent Defendant from foreclosing on the Property (doc. 5-1 at 3–5) are liberally construed as a wrongful foreclosure claim for failure to send the requisite notices under § 51.002 of the Texas Property Code, rather than as a stand-alone claim under the Code.

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings.  *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)).  In Texas, "a debtor may

recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011).  The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).  A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Matthews*, 2011 WL 3347920, at *2.  Recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be [a] [grossly] inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Plaintiff contends that he never received the notice of default and intent to accelerate that Defendant was required to mail him under § 51.002 of the Texas Property Code.  (doc. 5-1 at 4.) He claims he did not receive notice of the substitute trustee sale and Defendant failed to "physically post" a copy of the notice "at the courthouse [] specified" by the Code.  (*Id.* at 5.)  He argues, in essence, that these "defects" prevent Defendant from proceeding with the foreclosure.  (*Id.*)

To conduct a lawful foreclosure in Texas, a lender "must strictly satisfy the notice requirements set forth in the deed of trust and prescribed by law." *Gossett v. Fed. Home Loan Mortg. Corp.*, No. CIV.A. H-11-508, 2013 WL 321664, at *5 (S.D. Tex. Jan. 24, 2013) (citation omitted).  The Texas Property Code requires a lender to provide to the debtor notice of default and

intent to accelerate and to give the debtor an opportunity to cure the default within a minimum of 20 days. *See* Tex. Prop. Code Ann. § 51.002(d) (West 2013). If the lender invokes the power of sale under the deed of trust, it must provide to the debtor notice of the time and place of the foreclosure sale at least 21 days prior to the date of the sale by posting notice in the county where the property is located, filing the notice with the office of the county clerk, and "serving written notice of the sale by certified mail on each debtor." *Id.* § 51.002(b). The Code provides that "[s]ervice of a notice under [§ 51.002] by certified mail is complete when the notice is deposited in the [U.S.] mail, postage prepaid and addressed to the debtor at the debtor's last known address." Tex. Prop. Code Ann. § 51.002(e). Pursuant to § 51.002(e), courts have concluded that constructive notice, as opposed to actual notice, satisfies the notice requirements. *See Rodriguez v. Ocwen Loan Servicing, LLC*, 306 F. App'x 854, 856 (5th Cir. 2009) (per curiam); *Munoz v. HSBC Bank USA, N.A.*, No. CIV.A. H-12-0894, 2013 WL 265982, at *7 (S.D. Tex. Jan. 22, 2013).

Here, on March 5, 2013, the substitute trustee sent a "notice of substitute trustee sale" on Defendant's behalf to Plaintiff's counsel at an address in Irving, Texas, and to Plaintiff at the Property's address and at an address in Addison, Texas, via certified mail, return receipt requested. (*See* doc. 6-2 at 7–16.) Defendant filed a copy of the sale notice with the Dallas County Clerk on March 11, 2013. (*See id.* at 1.) Based on these documents that are considered part of the pleadings, Plaintiff's allegations fail to raise a reasonable inference that there were "defects" in the foreclosure proceedings due to Defendant's failure to provide him with and physically post the notice of foreclosure sale as required by § 51.002(b). *See* Tex. Prop. Code Ann. § 51.002(e). Similarly, his allegation that he did not "receive" the default or acceleration notices listed in § 51.002(d) could not plausibly entitle him to relief because the Property Code imposes no such requirement. *See*

*Rodriguez*, 306 F. App'x at 856 (holding that the allegation that the debtors "did not actually receive notice of the [] sale" could not "state a claim for relief because Texas law only imposes a constructive-notice requirement").   Accordingly, any wrongful foreclosure claim for failure to provide notice under §§ 51.002(b),(d) fails and should be dismissed.[5]

## D.   Texas Constitution

Defendant next seeks dismissal of Plaintiff's claim that the loan exceeded 80 percent of the Property's value in violation of Tex. Const. art. XVI, § 50(a)(6)(B),[6] arguing that the claim is time-barred.   (doc. 6 at 14–15.)

Although the statute of limitations is an affirmative defense, a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[] on the face of the complaint."   *Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am. AFL-CIO*, No. 3:09-CV-1181-B, 2010 WL 2473840, at *4 (N.D. Tex. June 16, 2010) (citing *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

---

[5] Plaintiff's request for injunctive relief to prevent Defendant from foreclosing and evicting him from the Property (doc. 5-1 at 5–7) is fatal to any wrongful foreclosure action since recovery is based on the mortgagor's lost possession. *See Petersen v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.) (holding that "[w]here the mortgagor's possession is undisturbed, he has suffered no compensable damage"); *see also Medrano v. BAC Home Loans Servicing, LP.*, No. 3:10–CV–02565–M (BF), 2012 WL 4174890, *3 (N.D. Tex. Aug.10, 2012) ("An attempted wrongful foreclosure is not an action recognized under Texas law."). Any wrongful foreclosure claim therefore fails for this additional reason.

[6]   Section 50(a)(6) of the Texas Constitution places numerous restrictions on home mortgages, and subsection 50(a)(6)(B) in particular prohibits loans that, when added to the principal balances of all other liens, exceed 80 percent of the home's fair market value. Tex. Const. Ann. art. XVI, § 50(a)(6)(B) (West 2006). A debtor may give the lender notice of a constitutional violation, and the lender has 60 days to cure it. *Id.* § 50(a)(6)(Q)(x). If the lender fails to correct a defect during the 60-day window, it forfeits all principal and interest on the loan. *Id.* Here, the DCAD report shows the Property's appraised fair market value was $249,500.00 in 2006—the year Plaintiff obtained the loan. (doc. 5-1 at 32.) Both the note and deed of trust reflect the principal loan amount to be $255,200.00. (*Id.* at 3, 10.) Because according to these documents the loan-to-value ratio exceeded 80 percent, the complaint raises a reasonable inference that the loan violated Tex. Const. art. XVI, § 50(a)(6)(B).

### 1.      Applicable Limitations Period

Section 50(a)(6) of the Texas Constitution does not include an express statute of limitations. *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 673 (5th Cir. 2013), *cert. denied*, 2013 WL 3193331 (U.S. Oct. 7, 2013).   Texas law provides for a "residual" four-year limitations period that applies in "[e]very action for which there is no express limitations period, except an action for the recovery of real property."[7]  Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2008).  In *Priester*, the Fifth Circuit acknowledged that "the Texas Supreme Court ha[d] not [yet] addressed whether [the] residual limitations period applies to defects in homestead liens," but found that the intermediate appellate courts that had addressed the issue had held in the affirmative.  *Priester*, 708 F.3d at 673.  Citing to various Texas cases "that had applied the residual limitations period to other types of [state] constitutional claims," the Fifth Circuit concluded that this limitations period also "applies to constitutional infirmities under Section 50(a)(6)."  *Id.* at 673–74.  Notably, the Court rejected the plaintiffs' argument that "no statute of limitations applies" to "liens created in violation of Section 50(a)(6)" because these are void *ab initio* rather than voidable.  *Id.* at 674. It cited to Texas Supreme Court precedent characterizing such liens as voidable, and found that this characterization was supported by "the constitutional scheme," since a "void" lien cannot be "voided" by future action, but the "cure provision" of § 50(a)(6)(Q)(x) allows home equity loans to be voided at a time after their creation.  *Id.* n.4 (citations omitted).[8]

---

[7]  Plaintiff has not yet lost ownership or possession of the Property, and he filed suit to prevent such losses.  Accordingly, this exception is inapplicable here.

[8]   The court agreed with the lower courts' reasoning that even "constitutional rights may be subjected to [] time limitations" because they are "encumbered by the same problems as are other types of claims—they may become stale as do other claims, and bring with them the associated problems with overdue lawsuits, such as faded memories, departed witnesses, and misplaced evidence." *Priester*, 708 F.3d at 673 (citations and internal quotation marks omitted).

Although *Priester* involved different subsections of § 50(a)(6), federal district courts have applied its holding to actions under subsection 50(a)(6)(B). *See, e.g.*, *Cypert v. USBC Bank USA Nat. Ass'n*, No. 3:13-CV-1032-D, 2013 WL 5822339, at *2 (N.D. Tex. Oct. 30, 2013) (Fitzwater, C.J.); *Ausmus v. Deutsche Bank Trust Co. Nat. Ass'n*, No. 3:13-CV-148, 2013 WL 3938515, at *3 (S.D. Tex. July 29, 2013); *Underwood v. Wells Fargo Bank, N.A.*, No. CIV.A. H:12-3437, 2013 WL 3788094, at *2 (S.D. Tex. July 18, 2013).[9]   The Court agrees that *Priester* may be applied to all subsections of § 50(a)(6).  As the court in *Ausmus* explained, "the language in *Priester* is broad enough to subject all alleged violations of section 50(a)(6)'s numerous subsections to the residual limitations period . . . and there is no principled basis for distinguishing the various subsections for limitations purposes." *Ausmus*, 2013 WL 3938515, at *3 n.3.  Accordingly, Plaintiff's claim under § 50(a)(6)(B) is subject to Texas's residual limitations period.  To state a claim for relief, it must appear from the face of his complaint that he filed suit within four years after the claim accrued. *See Priester*, 708 F.3d at 674; *Simmons*, 2010 WL 2473840, at *4.

### 2.   *Claim Accrual*

The Texas constitution does not "define the accrual date" for purposes of § 50(a)(6). *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 840 (Tex. App.—Dallas,  2008, no pet.).  In *Priester*, the Fifth Circuit first noted that the general rule in Texas, known as the "injury rule," holds that a "cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Priester*,708 F.3d at 675 (citing *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)).  It also noted that

---

[9]  The plaintiffs in *Priester* alleged that their home equity loan violated subsection 50(a)(6)(M)(i) because the "closing of the loan occurred in their home rather than at the office of an attorney, the lender, or a title company", and that it violated 50(a)(6)(N) because "they did not receive notice of their rights twelve days before closing as required by the state constitution." *Priester*, 708 F.3d at 671.

the "discovery rule" is a "very limited" exception that "operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim."[10]  *Id.* (citing *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)). Noting that state and federal district "courts ha[d] applied the injury rule rather than the discovery rule in every case in which they ha[d] applied limitations to Section 50(a)(6) violations," the Court "conclude[d] that the legal injury rule applies to the creation of unconstitutional liens."  *Id.* at 675. Consequently, it held that a cause of action for violations of § 50(a)(6) accrues on the date of the "lien's closing," rather than on the date that the plaintiff discovers the violations.[11]  *Id.*  at 675–76 (citations omitted).

Here, Plaintiff alleges that he "executed" the promissory note for his home equity loan on September 20, 2006.  (doc. 5-1 at 3.)  The copies of the note and deed of trust attached to his complaint indicate that he closed on the loan on that date.  (*Id.* at 10, 14, 28.)  Both documents also show the principal loan amount to be $255,200.00.  (*Id.* at 10, 14.)  If the loan exceeded 80 percent of the Property's fair market value on September 20, 2006, then any violation of § 50(a)(6)(B) occurred on that date.  *See Priester*, 708 F.3d at 675–76; *Underwood*, 2013 WL 3788094, at *2 (holding that the plaintiffs' claim under §50(a)(6)(B) accrued on the date of closing; noting that on that date the plaintiffs "knew whether the loan was more than eighty percent of the fair market value of the home").  Accordingly, limitations began to run on that date and expired on September 20,

---

[10]  Texas courts apply the discovery rule only in those cases where the nature of the plaintiff's injury is "inherently undiscoverable," meaning that "it is nearly impossible for the plaintiff to be aware of his injury at the time he is injured." *Priester*, 708 F.3d at 676 (citing *S.V. v. R.V.*, 933 S.W.2d 1, 6–7 (Tex. 1996)).

[11]  The Fifth Circuit further concluded that *Priester* was not "one of those 'rare' instances in which the discovery rule applie[d]" because there was nothing in the transaction "that made the [plaintiffs'] injury undiscoverable" since on the date of closing "they knew that the closing documents were signed in their living room and that they were not given notice of their rights." *Priester*, 708 F.3d at 675–76.

2010. Because Plaintiff did not file suit until March 15, 2013, any claim under § 50(a)(6)(B) is time-barred and fails as a matter of law. *See Cypert*, 2013 WL 5822339, at *2 (dismissing with prejudice the plaintiffs' claim under §50(a)(6)(B) because it was time-barred).

**E.     FDCPA**

Defendant argues that Plaintiff fails to state a claim under the FDCPA because it is not a "debt collector", since "its principal business is not the collection of debts or enforcement of security instruments," and it otherwise falls under the exception for a "consumer's creditors." (doc. 6 at 17.)

The FDCPA seeks "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." *Peter v. GC Servs. L.P.*, 310 F.3d 344, 351–52 (5th Cir. 2002) (citation omitted); *see also* 15 U.S.C. § 1692(e). Among other things, the Act requires a debt collector, within five days after its "initial communication with a consumer in connection with the collection of any debt," to provide the consumer with certain disclosures, including her right to dispute or request validation of the debt. 15 U.S.C. § 1692g(a). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). There are two categories of debt collectors: those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly." *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008). The Act exempts from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt *which was originated by such person.*" 15 U.S.C. § 1692g(a)(6)(F) (emphasis added). Pursuant to this

16

exception, courts have concluded that "[t]he term 'debt collector' does not include lenders[,] ... the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Gipson v. JPMorgan Chase*, No. 3:13-CV-2477-L, 2013 WL 3746003, at *2 (N.D. Tex. July 17, 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985)).

Here, Plaintiff asserts that on March 14, 2013, he "made a request" to Defendant "for a verification of the debt" pursuant to the FDCPA.  (doc. 5-1 at 4.)  He "believes" that under the FDCPA, Defendant cannot proceed with the foreclosure until 30 days after the date he sent his request.  (*Id.* at 5.)  Notably, he fails to allege or assert any facts raising a reasonable inference that Defendant collects debts as the "principal purpose" of its business or that it collects debts "regularly."  *See Hester*, 289 F. App'x at 41.  Moreover, while the notice of substitute trustee sale attached to the complaint lists Defendant as the "mortgagee" and "mortgage servicer," Plaintiff does not contend, and nothing in the pleadings indicates, that the loan was in default at the time MERS assigned it to Defendant's predecessor.  *See Gipson*, 2013 WL 3746003, at *2; (*see also* doc. 5-1 at 2–7, 69).  The allegations in the complaint fail to raise a reasonable inference that Defendant was a debt collector for purposes of the FDCPA.  Without more, any claim under this statute fails to meet the applicable pleading standards and should be dismissed.  *See Iqbal*, 556 U.S. at 678 (to state a claim for relief, a plaintiff must plead sufficient facts to make the claim "plausible on its face"); *Guidry*, 954 F.2d at 281 (well-pleaded facts are needed to avoid dismissal).

**F.     TDCPA**

Defendant contends that any claim under the TDCPA is subject to dismissal because Plaintiff fails to assert any facts showing that Defendant: (1) made a misrepresentation; (2) used a deceptive

means to collect a debt; or (3) threatened to take an action prohibited by law.[12]  (doc. 6 at 18.)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *rec. adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012).  The TDCPA defines "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection."   Tex. Fin. Code Ann. § 392.001(6) (West 2006).  In turn, "debt collection" is defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."  *Id.* § 392.001(5).  This can include "actions taken in foreclosing [on] real property." *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012) (citation omitted); *Swim v. Bank of Am.*, No. 3:11-CV-1240-M, 2012 WL 170758, at * 5 (N.D. Tex. Jan. 20, 2012).  Although the attempted foreclosure may fall within the purview of the TDCPA, Plaintiff fails to identify a specific provision that Defendant allegedly violated.  (*See* doc. 5-1 at 3–5.)  Any claim under the TDCPA should be dismissed for this reason alone.  *See Iqbal*, 556 U.S. at 678 (to survive dismissal, the complaint must  plead enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  Nevertheless, Defendant construes Plaintiff's allegations as implicating §§ 392.304(a) and 392.301(a)(8).  (*See* doc. 6 at 18–19.)

---

[12]  Defendant also argues that Plaintiff fails to state a claim under the TDCPA because any such claim is entirely "premised upon [Plaintiff's] assertion that the April 2, 2013 foreclosure cannot commence because he sent a debt validation letter to Defendant on March 14, 2013," but "there is no such requirement under the [TDCPA]."  (doc. 6 at 18.)  Plaintiff's allegation regarding his verification request does not appear to be a basis for a claim under the TDCPA, however.  (*See* doc. 5-1 at 5) (Plaintiff "believes that under the provisions of the [FDCPA] the foreclosure may not be conducted until a thirty [] day debt verification period has expired.").

### 1.       *Section 392.304(a): Fraudulent, Deceptive, or Misleading Representations*

According to Defendant, "a fundamental element of Plaintiff's [TDCPA claim" lacking in the complaint "is that Defendant made a misrepresentation" or "used a deceptive means to collect a debt" in violation of § 392.304(a).  (doc. 6 at 18.)

During debt collection, or in obtaining information concerning a consumer, § 392.304(a) prohibits a debt collector from using "a fraudulent, deceptive, or misleading representation that employs [certain prohibited] practices."   Tex. Fin. Code Ann. § 392.304(a) (West 2004). "Subsection 392.304(a)(19) operates effectively as a 'catch-all' provision, prohibiting a debt collector from 'using any [] false representation or deceptive means to collect a debt or obtain information concerning a consumer.'"   *Sanghera*, 2012 WL 555155, at *8 (citing *Id.* § 392.304(a)(19)).  For a party's statement to constitute a misrepresentation, that party "must have made a false or misleading assertion."  *Id.* at *9.

To the extent Plaintiff asserts a claim based on Defendant's purported failure to provide him with and post the requisite foreclosure notices, his complaint fails to explain how such failure amounts to making false or misleading assertions. (*See* doc. 5-1 at 3–5.)  As discussed, in light of the attachments to the complaint and motion, Plaintiff's allegations fail to raise a reasonable inference that Defendant did not comply with the notice requirements of Tex. Prop. Code § 51.002. Lastly, to the extent any TDCPA claim is based on Defendant's alleged violation of subsection 50(a)(6) of the Texas Constitution, Plaintiff does not explain how such a violation constitutes a false representation or a deceptive means to collect a debt.  (*See* doc. 5-1 at 3.)  Given Plaintiff's failure to state a claim under § 392.304(a) that is plausible on its face, any claim under this section should

be dismissed.  *See Iqbal*, 556 U.S. at 678.[13]

### 2.      *Section 392.301(a)(8) Threats or Coercion*

Defendant also argues that Plaintiff fails to "plead any set of facts showing that Defendant

. . . threatened to take an action prohibited by law" for purposes of § 392.301(a)(8).  (doc. 6 at 18.)

It claims that by initiating the foreclosure, it "only attempted to pursue its contractual rights under

[the] deed of trust."  (*Id.*)

"In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that

employ ... threatening to take an action prohibited by law."  Tex. Fin. Code Ann. § 392.301(a)(8)

(West 2006).

Plaintiff's allegations regarding the lack of notice and the violation of the Texas Constitution

could not plausibly entitle him to relief under § 392.301(a)(8) because he does no state how these

actions prohibited Defendant from foreclosing on the Property.  While Plaintiff maintains that

Defendant could not foreclose, he fails to allege he was current on his loan payments or offer any

other factual support to challenge  Defendant's right to foreclose.  Given the deed of trust's

provision granting Lender and its successors and assigns the power of sale upon default (doc. 5-1

at 15–16), the complaint fails to raise a reasonable inference that Defendant's attempt to foreclose

is an action prohibited by law.  *See Swim*, 2012 WL 170758, at * 5 (holding that "the TDCPA 'does

not prevent a debt collector from . . . exercising or threatening to exercise a statutory or contractual

---

[13]  In his sur-reply, Plaintiff contends that "the 'facts' regarding the ownership of the alleged loan have either been concealed or misrepresented" by Defendant.  (doc. 18 at 2.)  Because Plaintiff filed his sur-reply without leave of Court, and therefore deprived Defendant of the opportunity to respond, the Court is not required to consider this argument.  *See Pennsylvania Gen. Ins. Co. v. Story*, No. CIV.A.3:03-CV-0330-G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) ("a court generally will not consider arguments raised for the first time in a reply brief") (citations omitted).  Even if considered, this allegation could not support a claim under § 392.304(a) because the Court in the first suit found that "[u]pon [the valid] assignment of the deed of trust, Countrywide and its successors [i.e., Defendant] acquired [the] same rights to sell and foreclose [on] the property" as MERS and the original lender.  *Warren*, 2012 WL 3020075, at *4.

right of seizure, repossession, or sale that does not require court proceedings'") (citing Tex. Fin. Code § 392.301(b)(3)); *Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF, 2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012) ("foreclosure or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on [her] mortgage").   Any claim under § 392.301(a)(8) should also be dismissed.

## G.   Injunctive Relief

Defendant lastly contends that Plaintiff is not entitled to injunctive relief because "he failed to fulfill his contractual obligation to timely pay his mortgage," and his request cannot survive without a viable cause of action.   (doc. 6 at 19.)

"To obtain injunctive relief, [a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'"   *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).   Here, Plaintiff seeks a TRO and a permanent injunction to prevent "Defendant and its agents" from conducting the foreclosure and evicting him from the Property.   (doc. 5-1 at 5–6.)   Because dismissal of Plaintiff's claims is warranted on the merits, he cannot establish any likelihood of success on the merits.   *See Jackson*, 2011 WL 3874860, at *3.   Accordingly, his request for injunctive relief should be denied.[14]

---

[14]   Although he did not expressly join them in the action, Plaintiff asserts that the substitute trustees with the law firm of Barrett, Daffin, Frappier, Turner & Engel, LLP are "acting on behalf of Defendant," and he seeks to enjoin them from foreclosing and evicting him from the Property.   (doc. 5-1 at 6.)   Because he fails to state a viable claim for relief, his request for injunctive relief also fails.   To the extent that he seeks injunctive relief against the substitute trustees, the court should *sua sponte* dismiss such request. *See Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (*sua sponte* dismissing action against a defendant who had not joined the motion to dismiss, explaining that a "court has the authority to consider the sufficiency of a complaint and 'dismiss an action on its own motion as long as the procedure employed is fair'") (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006)).   The fourteen-day time frame for filing objections to the recommended dismissal ensures the procedure is fair by providing Plaintiff with notice and the opportunity to object. *See Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

### III.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal.  *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

All of Plaintiff's claims in the first and current lawsuits are based on Defendant's attempts to foreclose on the Property.  His claims for quiet title and declaratory judgment in the first action were dismissed with prejudice for failure to state a claim.  *See Warren*, 2012 WL 3020075, at *8.  Although he appears to assert different claims in the current action, e.g., for wrongful foreclosure and violations of the FDCPA and the TDCPA, these claims also fail because they are factually unsupported.  Moreover, any claim for violation of the Texas Constitution fails as a matter of law because it is barred by the statute of limitations.  It appears that he has alleged his best case, and an opportunity to amend is therefore unwarranted.

## IV.  RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED,** and all of Plaintiff's claims against it should be dismissed with prejudice.

**SO RECOMMENDED on this 15th day of November, 2013.**

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE